IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DAVID L. JEFFREY,**

    **Plaintiff,**

                                                              Civil Action 2:16-cv-1122
    v.                                            Chief Judge Edmund A. Sargus, Jr.
                                                  Magistrate Judge Chelsey M. Vascura

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, David L. Jeffery, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 15), the Commissioner's Memorandum in Opposition (ECF No. 18), Plaintiff's Reply (ECF No. 19), and the administrative record (ECF No. 14). For the reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g) for further consideration consistent with this Report and Recommendation.

## I. BACKGROUND

Plaintiff filed his application for Supplemental Security Income on August 8, 2013, alleging that he has been disabled since June 30, 2004, due to several impairments, including epilepsy and bi-polar/depressive disorder. (ECF No. 14-6, PAGEID # 253). Plaintiff's application was denied initially and upon reconsideration. He timely filed a request for an administrative hearing. The hearing was held before Administrative Law Judge Thuy-Anh T. Nguyen ("ALJ") on December 15, 2015, at which Plaintiff, represented by counsel, appeared by videoconference and testified. William J. Kiger, a vocational expert ("VE"), also appeared and testified at the hearing. On March 2, 2016, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (ECF No. 14-2, PAGEID # 81). On September 28, 2016, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. Plaintiff then timely commenced this action.

In his Statement of Errors, Plaintiff raises one argument: the ALJ's determination of the Plaintiff's mental residual functional capacity ("RFC") was not supported by substantial evidence. More specifically, Plaintiff points out that the ALJ's mental RFC tracks the state-agency reviewing psychological consultants' opinions even though the ALJ explicitly found that the record evidence showed him to be more limited. Plaintiff also points out that despite affording the opinion of consultative psychological examiner James N. Spindler partial weight, the ALJ failed to include any of the limitations Mr. Spindler opined.

In her memorandum in opposition, the Commissioner counters that the record as a whole provides substantial evidence supporting the ALJ's mental RFC determination. The

Commissioner points out that the ALJ included all of the limitations that the state-agency psychological consultants opined and argues that the ALJ's rejection of the limitations Dr. Spindler opined is supported by the ALJ's discussion of the record evidence. In particular, the Commissioner emphasizes the ALJ's discussion of Plaintiff's treatment history and activities of daily living.

## II.   RELEVANT RECORD EVIDENCE[1]

Psychologist James N. Spindler examined Plaintiff on October 29, 2013. After setting out his clinical observations and findings, Mr. Spindler provided the following assessments of Plaintiff's abilities and limitations:

> He seems likely to have a problem understanding, remembering and carrying out instructions in many job settings. However he seems capable of managing a variety of unskilled, labor-type jobs.
>
> * * *
>
> He seems unlikely to have the ability to sustain a working pace and to maintain a level of attention and concentration that would be required for most job settings.
>
> * * *
>
> Claimant reports that when he was employed he received good job performance ratings, but often had problems getting along with others. It seems unlikely that [his] behavior would be any different if he were employed today.
>
> * * *
>
> Based on clinical observations and what the claimant has told the examiner, David does not appear to be handling the current

---

[1] This discussion is limited to evidence bearing on the sole contention of error Plaintiff raises in his Statement of Errors. (ECF No. 15.)

3

> stressors in his life very effectively. It seems likely that he will not
> respond appropriately to a competitive work setting.

(ECF No. 14-7, PAGEID ## 395-396).

The record also includes the assessments of State agency medical and psychological consultants, who did not examine Plaintiff but evaluated his abilities and limitations on the basis of medical records and the reports of examining health care professionals. Dr. David DeMuth concluded that Plaintiff was moderately limited in his ability to understand, remember, and carry out detailed instructions; his ability to maintain attention and concentration for extended periods; his ability to work in coordination with or in proximity to others without being distracted by them; his ability to work a normal day or week without interruptions from psychologically-caused symptoms; his ability to perform at a consistent pace without an unreasonable number and length of rest periods; his ability to interact appropriately with the public; his ability to accept instructions and to respond appropriately to criticism from supervisors; his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; his ability to respond appropriately to changes in the work setting; and his ability to make set realistic goals or make plans independently of others. (ECF No. 14-3, PAGEID ##135-136). Dr. Cynthia Waggoner's conclusions were similar. (ECF No. 14-3, PAGEID ##151-152). Both Drs. DeMuth and Waggoner opined that Plaintiff retained the mental RFC to complete simple, one- to three-step repetitive work in a static environment with limited productions standards; and superficial social interaction with the public, co-workers, and supervisors where he would work best in small groups or alone. (*Id*. at PAGEID ##135-136; 150-15.)

4

The record also contains statements from a number of non-examining health care providers. None of those statements is intended to be an assessment of Plaintiff's abilities, however. In fact, when Plaintiff's representative sent them to the ALJ after the December 2015 hearing, he explicitly stated that the purpose of the statements was to assist the ALJ in interpreting Mr. Spindler's assessment. (ECF No. 14-7, PAGEID # 577). Each of the statements attached to the letter includes a definition of the word "moderate" as it qualifies the word "impairment." (ECF No. 14-7, PAGEID ## 579-602). None of the statements includes an assessment of Plaintiff's abilities.

In addition to the findings of the examining and non-examining health care professionals, the record includes Plaintiff's testimony at the December 2015 hearing, his September 2013 Function Report, and medical records from July 2014 and July 2015. At the hearing, Plaintiff testified that he sometimes has thoughts of hurting other people, including in work settings; that he yells at relatives and friends without realizing that he is yelling; that he lashes out when he is angry; that three to four times in a typical week he screams, voices his opinions loudly, and stomps because he does not like what someone else is saying; and that he can be around only one or two people at a time comfortably. (ECF No. 14-2, PAGEID ## 103-105, 109, 115). In the Function Report, Plaintiff represented that he rarely engages in social activities and only with his girlfriend. (ECF No. 14-6, PAGEID # 266). He further represented that he has problems getting along with people, that he likes to be by himself, that he does not get along with authority figures, that he does not handle stress well, and that he gets mad easily. (ECF No. 14-6, PAGEID ## 267-268). During a diagnostic session at a psychological counseling center in July 2015, plaintiff reported "[n]o income, anxiety, and loss of control." (ECF No. 14-7, PAGEID

#529). During that visit, Plaintiff was diagnosed with antisocial personality disorder. (ECF No. 14-7, PAGEID # 541).

During the December 2015 administrative hearing, the ALJ and Plaintiff's attorney posed a series of hypothetical questions to the VE. All of the questions included the same physical limitations the ALJ ultimately assessed for Plaintiff, but the nonexertional limitations varied. When the hypothetical restrictions included "occasional and superficial [interaction] with the public . . . and low-stress jobs, defined as those requiring only occasional decision-making," the VE opined that a hypothetical individual with Plaintiff's background could perform 135,000 jobs that exist in the national economy. (ECF No. 14-2, PAGE # 119). When the additional restriction of being able to "work only with two other coworkers or supervisors in the work setting" was added, the VE reduced the number of available jobs to 40,000. (ECF No. 14-2, PAGE # 119). An additional restriction that "three times a week the individual would not be able to relate or interact with coworkers, supervisors, or the public" eliminated all available jobs. (ECF No. 14-2, PAGE # 120). When the limitation of being "off task 20 percent of a given work day or work week," was added to account for an inability to tolerate stress, the VE again testified that such an individual could not sustain competitive employment. (ECF No. 14-2, PAGE # 121). The VE elaborated that an individual who was off task ten percent of the work day or work week could find employment but that a percentage beyond fifteen would be the cutoff "for sustaining a competitive job." (ECF No. 14-2, PAGE # 122).

### III. THE ADMINISTRATIVE DECISION

On March 2, 2016, the ALJ issued the decision denying Plaintiff benefits. The ALJ concluded that Plaintiff had the severe impairments of epilepsy/seizures, chronic obstructive

pulmonary disease, bipolar/depressive disorder, anxiety disorder, and history of alcohol dependence/ polysubstance abuse disorder. The ALJ next concluded that Plaintiff's impairments do not meet or medically equal any of the listed impairments. The ALJ then assessed the following mental RFC:

> [Plaintiff] is capable of performing one-to three-step repetitive work that does not require fast-paced production standards and occurs in a static environment. He can relate on an occasional and superficial level to the public, coworkers, and supervisors. [Plaintiff] is capable of simple and repetitive work that requires limited productions standards, superficial social interaction. He is capable of performing low stress jobs defined as having occasional decision-making.

(*Id.* at PAGEID# 74.)

In reaching this mental RFC, the ALJ rejected the opinions of Drs. Roach, Coblentz, Wolfgang, Yee, and Dubbeling as too extreme, unsupported, or too old to be probative. He accorded the opinion of consultative examining psychologist Mr. Spindler "partial weight," twice emphasizing that Mr. Spindler opined that Plaintiff "appeared to be handling the current stressors in his life 'very effectively.'" (*Id.* at PAGEID# 77-78.) Finally, the ALJ accorded the opinions of the state-agency psychological consultants "some weight," explaining that "the social limitations are not supported by mental status examinations" and that Plaintiff "is more limited than determined by the State agency consultants at the time of their review." (*Id.* at PAGEID# 79.) Notwithstanding the ALJ's finding that Plaintiff was more limited than the state-agency psychological consultants opined, he adopted the mental RFC they assessed and did not include additional limitations. As additional support for the mental RFC assessed, the ALJ cited Plaintiff's treatment history and activities of daily living.

Relying on the VE's testimony, the ALJ concluded that Plaintiff was not disabled as contemplated under the Social Security Act.

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)) *cert. denied sub nom. Paper, Allied-Indus., Chem.& Energy Workers Int'l Union v. TNS, Inc.*, 537 U.S. 1106 (2003). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

## V. ANALYSIS

As set forth above, for his sole contention of error, Plaintiff challenges the ALJ's mental RFC determination, asserting that it is not supported by substantial evidence. The undersigned agrees.

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010).

An ALJ is required to explain how the evidence supports the limitations that he or she set forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96–8p, 1996 WL 374184, at *6–7 (internal footnote omitted).

Here, the ALJ's explanation of how he arrived at Plaintiff's RFC determination creates confusion. This confusion, together with the errors the ALJ commits in his consideration of important record evidence, deprives his mental RFC formulation and ultimate nondisability

9

finding of substantial evidence. To begin, as Plaintiff points out, despite according the opinions of the state-agency psychological consultants only "some weight" and concluding that Plaintiff "is *more limited* than determined by the State agency consultants," (ECF No. 14-2 at PAGEID# 79 (emphasis added)), the ALJ adopted the mental RFC the consultants opined and rejected any more restrictive nonexertional limitations opined by other medical sources. And although the ALJ accorded Mr. Spindler's opinion "partial weight," it is unclear what, if any, limitations that Mr. Spindler opined that the ALJ credited. Perhaps most troubling, however, is that the ALJ appears to heavily rely upon his misstatement of Mr. Spindler's opinion regarding Plaintiff's ability to handle stress. Twice within his decision, the ALJ stated that Mr. Spindler opined that Plaintiff "appeared to be handling the current stressors in his life '*very effectively*.'" (*Id*. at PAGEID# 77-78 (emphasis added).) But this is not what Mr. Spindler said. To the contrary, Mr. Spinder stated that Plaintiff did "*not* appear to be handling the current stressors in his life very effectively." (ECF No. 14-7, PAGEID# 396 (emphasis added).) Finally, the ALJ also mischaracterizes a July 2015 treatment record, stating that the record reflected that Plaintiff "did not have anxiety or loss of control." (ECF No. 14-2 at PAGEID# 77.) But contrary to the ALJ's characterization, Plaintiff did not tell a counselor in July 2015 that he had no anxiety or loss of control. Rather, he reported that he had "[n]o income, anxiety, and loss of control," indicating that he *did* have anxiety and loss of control. (ECF No. 14-7, PAGEID #529).

The undersigned is unable to discern how these errors may have influenced the ALJ's mental RFC calculation or other aspects of his opinion, such as his credibility determination. As noted above, in arriving at Plaintiff's mental RFC, the ALJ rejected the opinions of Drs. Roach, Coblentz, Wolfgang, Yee, and Dubbeling and declined to accord controlling weight to *any*

10

opinion in the record. The ALJ's mental RFC assessment belies his conclusion that Plaintiff was more limited than the state-agency consultant's opined. The *only* examiner's opinion to whom the ALJ accorded weight was Mr. Spindler's, and the ALJ incorrectly believed that Mr. Spindler found that Plaintiff was handling stressors "very effectively," when Mr. Spinder actually found exactly the opposite. Significantly, the VE testified that additional restrictions on Plaintiff's ability to tolerate stress in the form of being off task more than 15% of the time would be work preclusive. *Cf. Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) ("In order for a VE's testimony to constitute substantial evidence that a significant number of jobs exists, the questions must accurately portray a claimant's physical and mental impairments." (internal quotation omitted)).

The Court is therefore convinced that the ALJ's errors in characterizing the record evidence may not have been harmless and that this matter should be remanded for further consideration. *See Glenn v. Comm'r of Soc. Sec.*, 763 F.3d 494, 499-500 (6th Cir. 2014) (errors in the ALJ's characterization of evidence on which non-disability finding is based warrant remand).

For that reason, it is **RECOMMENDED** that Plaintiff's sole contention of error be **SUSTAINED**.

## VI. DISPOSITION

Due to the errors outlined above, Plaintiff is entitled to an order remanding this case to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g). Accordingly, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g) for further consideration consistent with this Report and Recommendation.

## VII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, he may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed,

appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("a general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal")(citation omitted).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE